IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**IVONE Y. VEGA,**

    **Plaintiff,**

v.                                              No. CIV. 00-1249 JP/DJS

**ISAAC VALERIO, Individually and in his**
**Official Capacity as an Officer with the**
**Town of Taos Police Department, and**
**NEIL CURRAN, in his Individual Capacity**
**and in his Capacity as Chief of Police of the**
**Taos Police Department, LYL OLIVER,**
**Magistrate Court Clerk, SYLVIA MIRABAL,**
**Chief Magistrate Court Clerk, and JANE DOE,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On October 23, 2000 Defendants Oliver and Mirabal filed a motion to dismiss. (Doc. No. 10). That motion will be granted in part.

**I.    Background**

This is a case of mistaken identity brought against two police officers and three state court clerks. Plaintiff's factual allegations are as follows: On or about June 25, 1997, a Taos County Sheriff's Deputy issued traffic tickets to a woman--not Plaintiff--by the name of Ivonne Aragon-Vega ("Aragon"). Compl. ¶11. The Deputy caused these tickets to be filed in Taos County Magistrate Court, in a case that came to be captioned State v. Ivonne Vega, No. M-53-TR-971. Id. At least one of the citations that commenced State v. Ivonne Vega, No. M-53-TR-971, lists Aragon's birth date as February 10, 1972 and indicates that she had a post office box in Taos, New Mexico. Id.

Plaintiff, whose full name is Ivone Yasmin Vega, apparently was born on the same day and month as Aragon but in a different year,[1] and has a post office box in Rancho de Taos. Aragon apparently did not pay her fines or appear in court to contest her tickets. Id. ¶¶3 and 12. Therefore, on February 23, 1999 and March 5, 1999 "the Taos County Magistrate Court" issued bench warrants for the defendant in No. M-53-TR-971. Id. ¶14. The February 23, 1999 and March 5, 1999 bench warrants ("bench warrants") bore the name "Ivonne Vega" and indicated that Ivonne Vega was born on February 10, 1972 and had a post office box in Taos. Plaintiff asserts that the bench warrants did not bear Plaintiff's social security number, id. ¶13, although she also states that the bench warrants did not list Aragon's social security number and implies that they did not note any social security number at all, id. ¶14.

On June 4, 1999 a Taos police officer acting on the bench warrants issued in No. M-53-TR-971 arrested Plaintiff. Id. ¶17. The arresting officer completed an "Arrest/Booking Report" which listed Plaintiff's name, date of birth, and social security number, none of which matched Aragon's or any of the data on the bench warrants. Id. ¶19. The arresting officer then presented Plaintiff to a Magistrate Court Judge, who heard Plaintiff's protestations that she was not Aragon, but who then set bail at $50 plus "the bench warrant fee" and ordered Plaintiff to appear on June 9, 1999. Id. ¶20.

On June 6, 1999 Magistrate Court Judge Gonzales dismissed the citations upon which the

---

[1] Plaintiff first alleges that she was born on February 10, 1971 and that Aragon was born on the same day one year later. Compl. ¶¶11-13. But later Plaintiff claims that, at the time she was arrested in 1999, Plaintiff was 26 years old and Aragon was 19. Id. ¶30D. I will not hazard a guess as to Plaintiff's and Aragon's correct birth dates and ages. But I will observe the irony in Plaintiff's inability to state accurately even her own personal data in this case in which she discerns civil rights violations from much the same conduct on the part of the Clerk Defendants.

bench warrants were based.  Id. ¶15.  Nevertheless on June 7, 1999 Plaintiff paid $60 toward the fine assessed in M-53-TR-971.  Id. ¶21.  Plaintiff's explanation is that she feared she would be arrested again in relation to M-53-TR-971.  Id.  Plaintiff further alleges that Taos Magistrate Court Clerks Doe and Oliver never recalled the bench warrants, in spite of Magistrate Judge Gonzales' dismissal of the citations.  Id. ¶¶15-16, 48.

On August 6, 1999 the Magistrate Court issued a writ of garnishment against Aragon for judgment in a civil case captioned Cecilia Gallegos v. Ivonne Aragon-Vega, No. M-53-CV-266.  Id. ¶22.  The application for writ of garnishment lists Plaintiff's address under Aragon's name.  Plaintiff alleges that "[u]pon information and belief" Cecilia Gallegos obtained that address from "the Magistrate Court."  Id.  Apparently sometime after that, Plaintiff delivered a tort claim notice to Defendants alerting them again to her allegations that she had been wrongfully arrested and that "the Court" was confusing her identity with Aragon's  Id. ¶23.  Around October 20, 1999, evidently after delivery of the tort claim notice, an investigator hired by the New Mexico Self Insurer's Fund interviewed Plaintiff.  Id. ¶24.  The investigator represented to Plaintiff that "he had sat down with the Magistrate Court personnel and had reviewed Plaintiff's allegations with the Court" and assured Plaintiff that she would not be mistaken for Aragon again.  Id.

Yet on June 11, 2000 Defendant Oliver sent to Plaintiff's post office box a "Final Order to Show Cause" in No. M-53-TR-971.  Id. ¶26.  For her last factual allegation, Plaintiff avers that "[i]n order to avoid getting arrested again," she paid the outstanding fees in "the Aragon case," although it is unclear when she did so and which case she means.  Id. ¶27.

Plaintiff's complaint contains five counts.  For the most part, each of the first four counts attributes allegedly wrongful conduct to a different Defendant (except for Count III which

3

targets Defendants Oliver and Doe together).  At the outset, Plaintiff invokes sections 1983 and 1998 of an unspecified title in the United States Code,[2] and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as this Court's supplemental jurisdiction to hear state law claims.  Id. ¶1.  Plaintiff contends that the conduct described in Count I violated the Fourth and Fourteenth Amendments to the United States Constitution, and that the conduct described in Count III violated the Fourth, Fifth, and Fourteenth Amendments.  Plaintiff does not indicate which laws were violated by the conduct described in Counts II and IV.  Count V is a request for injunctive relief.

Defendants Oliver and Mirabal (collectively, with Defendant Doe, "Clerk Defendants") move to dismiss the case as to them on the ground that they are absolutely immune from suit under 42 U.S.C. § 1983 and that the New Mexico Tort Claims Act insulates them from tort claims.[3]  Plaintiff in her response clarifies that she is not asserting tort claims against any Defendants.  Plaintiff's complaint therefore will be construed as claims under 42 U.S.C. § 1983 against five state officers for alleged violations of various amendments to the United States Constitution, seeking relief which may include an injunction.

**II.    Standard**

In considering a motion to dismiss for failure to state a claim, a court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.  Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.

---

[2] In the next sentence, Plaintiff cites to Title 42 of the United States Code.  Compl. ¶1.  Title 42 has no section 1998.

[3] Although Defendants Oliver and Mirabal do not explicitly purport to argue on behalf of Defendant Doe, their arguments apply equally to Defendant Doe.

1984).  A court may dismiss a complaint only if it appears certain that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  In assessing a motion to dismiss, the court also should not look beyond the four corners of the complaint.  <u>Jojola v. Chavez</u>, 55 F.3d 488, 494 (10th Cir. 1995).

**III.    Discussion**

Clerk Defendants move to dismiss the claims against them for failing to withdraw the bench warrants and for issuing the Final Order to Show Cause on June 11, 2000, on the ground that Clerk Defendants are entitled to absolute immunity.  The Tenth Circuit has recently stated that absolute, quasi-judicial immunity extends to (1) non-judicial officers performing discretionary "judicial acts" and (2) ministerial acts taken at the direction of a judge.  <u>Whitesel v. Sengenberger</u>, 222 F.3d 861, 867-69 (10th Cir. 2000).  The Tenth Circuit has also ruled, twice, that court clerks are absolutely immune for claims resulting from the issuance of a warrant, on the ground that issuing a warrant is a quasi-judicial act.  <u>Lopez v. Shapiro</u>, No. 97-2334, 1998 WL 67376, at **2 (10th Cir. Feb. 19, 1998); <u>Newton v. Buckley</u>, No. 96-4204, 1997 WL 642085, at **4 (10th Cir. Oct. 17, 1997).  At issue in this case, however, is whether liability can result from a court clerk's failing to recall bench warrants and issuing an order to show cause.  The Tenth Circuit has not examined whether court clerks are immune for either of these two acts.

**A.    Quasi-judicial acts**

**1.    Failing to recall bench warrants**

Nevertheless, the Tenth Circuit would find that withdrawing a warrant, or not withdrawing it, is a quasi-judicial act, for any of several reasons.  First, if withdrawing or not

withdrawing a warrant involves a discretionary decision, court clerks are absolutely immune from suit in the Tenth Circuit. Whitesel, 222 F.3d at 869. Rule of Criminal Procedure 6-207(D) for the New Mexico Magistrate Courts states that "If the court withdraws the warrant, the court shall cause the warrant to be removed from the warrant information system." The use of the conditional "If" in Rule 6-207(D), instead of a more certain word like "When," could be read to imply a measure of discretion on the part of court clerks to decide, for instance, whether a case is in such a posture that any outstanding warrants should be recalled or withdrawn without involving the Magistrate Judge.[4]

On the other hand, both parties seem to agree that the act of withdrawing a warrant is one for which court clerks have no discretion and that court clerks withdraw warrants only at the direction of a judge. Compare Doc. No. 11 at 4 (asserting that court clerk merely aids "the court" in issuing and withdrawing warrants, using *court* as a synonym for *judge*) with Doc. No. 12 at 1-2 (asserting that court clerks "procedurally recall" warrants which have already been

---

[4] To reach this conclusion one would also need to find that the use of *court* in Rule 6-207(D) means something more than or other than *judge*. Support for this view is found in another sentence of the very rule at issue. Rule 6-207(A) provides that "the court" may issue an arrest warrant for someone whom "the magistrate judge" has ordered to appear but in fact has not appeared. NMRA 6-207(A). Concluding then that *court* means something different from *judge* in the New Mexico Rules of Criminal Procedure for the Magistrate Courts is merely a variant of the canon *expressio unius est exclusio alterius*. Fischer Imaging Corp. v. General Elec. Co., 187 F.3d 1165, 1173 n.18 (10th Cir. 1999). Second, the Tenth Circuit, in a case discussing the immunity of court clerks, has construed a state court rule authorizing "[t]he court" to take an action as a basis for concluding that a court clerk could take the action and was thus absolutely immune from suit. Newton, 1997 WL 642085, at **2-4.

recalled by unspecified person or entity).[5]  If that is so, the act of withdrawing a warrant is still a quasi-judicial one according to Whitesel because it is a "ministerial" act taken at the direction of a judge.  Whitesel, 222 F.3d at 869.  Cf. Cook v. City of Topeka, 654 P.2d 953, 961 (Kan. 1982) (finding court clerks not immune from suit for failing to recall a warrant because court clerk's duty to recall warrant is a routine and non-discretionary one).[6]

Further, withdrawing a warrant is sufficiently related to issuing one, which the Tenth Circuit has on two occasions found to be a quasi-judicial action.  Lopez, 1998 WL 67376, at **2; Newton, 1997 WL 642085, at **4.  If a court clerk acts in a quasi-judicial capacity when issuing a warrant, Plaintiff makes no argument, and none is apparent, why the quasi-judicial label would be lost when it comes time to withdraw that warrant.

### 2.     Final Order to Show Cause

Issuing an order to show cause is quite analogous to issuing a bench warrant which the

---

[5] Clerk Defendants then chide Plaintiff for improperly attempting to add factual allegations to her complaint by implying that the complaint contains an allegation that a judge had ordered the bench warrants recalled.  (Doc. No. 13 at 2.)  But Clerk Defendants do not retreat from their earlier position that what Plaintiff describes in her response is in fact what happened.  Unfortunately, no party ever really explains the process by which warrants are withdrawn or cases dismissed in New Mexico Magistrate Court.

[6] Clerk Defendants repeatedly criticize Plaintiff for ignoring the Tenth Circuit cases they cite, and indeed Plaintiff does not attempt to craft an argument against absolute immunity from controlling authority.  Yet Clerk Defendants' briefing is just as unhelpful due to their failure to address Cook.  Although not binding on this Court, Cook is the only decision among all cases brought to the Court's attention that discusses a court clerk's immunity for failing to recall a warrant.  If Clerk Defendants had read Cook, they would have distinguished it in one important way:  The alleged wrongful failure to withdraw the warrant in Cook led to Plaintiff's arrest.  In this case, Clerk Defendants had no basis for withdrawing the bench warrants until after Magistrate Judge Gonzales dismissed the citations on which the bench warrants were based, which was after Plaintiff was arrested, not before.  In other words, it appears that any failure to withdraw the bench warrants never harmed Plaintiff and also that the citations leading to Plaintiff's arrest were still outstanding at the time of her arrest.

Tenth Circuit has already concluded is a quasi-judicial act. Id. In fact, the former is very often a prelude to the latter. Therefore, because of the relationship between issuing a warrant and an order to show cause, and the similarity between the two, issuing the Final Order to Show Cause in this case was a quasi-judicial act. But that does not necessarily mean that Defendant Clerks are absolutely immune for this act.

### B.     Jurisdiction

As Whitesel indicates, immunity does not attach even to judicial (or quasi-judicial) acts, when taken "in the clear absence of all jurisdiction." Whitesel, 222 F.3d at 867. Where, as here, a quasi-judicial act is at issue, the immunity inquiry must focus on two individuals: the judge and the quasi-judicial official. Turney v. O'Toole, 898 F.2d 1470, 1474 (10th Cir. 1990). "Because quasi-judicial immunity derives from judicial immunity, the order must be one for which the issuing judge is immune from liability," i.e., the judge must have been within his jurisdiction in issuing the order. Id. Further, the quasi-judicial official claiming quasi-judicial immunity must also have acted within his "authority." Id.; see also Whitesel, 222 F.3d at 869-70 (analyzing whether pretrial services officers acted within their "authority" or "within the general subject matter of their jurisdiction").

Plaintiff's challenge in this case appears to be directed only at the Clerk Defendants' authority or jurisdiction, not a Magistrate Judge's. (Doc. No. 12 at 3.) Specifically, Plaintiff claims that Clerk Defendants acted in the clear absence of personal jurisdiction by sending the Final Order to Show Cause to Plaintiff, over whom Clerk Defendants lacked personal jurisdiction. There are two problems with Plaintiff's argument. One is that she points to no controlling case inquiring into whether a quasi-judicial official (rather than a judge or "the

court") has personal jurisdiction (rather than "general subject matter . . . jurisdiction") for immunity purposes.  The other is that any inquiry into personal jurisdiction appears most appropriately confined, in this case, to Aragon and not Plaintiff.  To find otherwise would be to eliminate absolute immunity in even the most innocent mistake of identity cases, and to do that would be contrary to the manner in which the immunity doctrine is to be applied.  <u>Barr v. Matteo</u>, 360 U.S. 564, 572 (quoting J. Hand) ("[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.")

Clerk Defendants' arguments in their present form are also unpersuasive.  Most troublesome is Defendant Clerks' conclusion that there was personal jurisdiction over Aragon in No. M-53-CV-266 "since the Order to Show Cause was in fact issued in the name of Aragon in a case involving Aragon." (Doc. No. 13 at 4.)   This illogical statement misapprehends the concept of personal jurisdiction.  Moreover, it seems to fly in the face of Plaintiff's allegation that Magistrate Judge Gonzales on June 6, 1999 dismissed the citations upon which No. M-53-TR-971 was based.  In this respect, this case is somewhat like <u>Dykes v. Hosemann</u>, upon which Plaintiff relies.  In <u>Dykes</u>, the judge defendant entered a child custody order without notice to the parent deprived of custody.  743 F.2d 1488, 1494 (11th Cir. 1984).  The plaintiff therefore contended that the judge was not absolutely immune because the judge acted without obtaining personal jurisdiction over all the parties.  <u>Id.</u> at 1496-97 (finding that judge had subject matter jurisdiction to enter custody order but remanding for determination as to whether judge knew he had no personal jurisdiction).

Because of the deficiencies in the parties' briefs, the parties should submit supplemental

9

briefs on the question of whether Clerk Defendants allegedly acted, or knew they acted, in the clear absence of all jurisdiction.  Each party should address in a cross-brief whether Defendant Clerks are or are not entitled to quasi-judicial immunity for taking the quasi-judicial act of sending a Final Order to Show Cause in a traffic case in which the underlying traffic citations had been dismissed.  The parties should pay much closer attention to the factual allegations than was previously given with respect to Clerk Defendants' motion to dismiss.  The parties should also make reference to controlling (i.e., Supreme Court and Tenth Circuit) case law, statutes, and court rules, relating to Clerk Defendants' authority or jurisdiction to issue orders and the consequences of dismissal of traffic tickets upon which a traffic offense case is based.

In addition, Plaintiff should respond to the three arguments concerning the possibility of injunctive relief which Clerk Defendants make under point III on page 3 of their reply brief.  (Doc. No. 13 at 3.)  However, Plaintiff need only address the possibility of an injunction concerning the Final Order to Show Cause.  Plaintiff makes two specific requests for injunctive relief:  Plaintiff asks that all Defendants be enjoined from (1) arresting Plaintiff and (2) "serving process" on Plaintiff.  Compl. ¶ 60.  Clerk Defendants do not make arrests and an injunction against Clerk Defendants from serving anything on Plaintiff would in no way address Plaintiff's allegation that Defendants Doe and Oliver failed to recall the bench warrants.

IT IS THEREFORE ORDERED THAT

(1) Clerk Defendants are absolutely immune from any claim arising from failing to withdraw the bench warrants and Clerk Defendants' Motion to Dismiss is granted as to that claim; and

(2) the parties must submit cross-briefs on the issues described above by not later than September 10, 2001.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**