IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IVONE Y. VEGA,

    Plaintiff,

v.                                           No. CIV. 00-1249 JP/DJS

ISAAC VALERIO, Individually and in his
Official Capacity as an Officer with the
Town of Taos Police Department, and
NEIL CURRAN, in his Individual Capacity
and in his Capacity as Chief of Police of the
Taos Police Department, LYL OLIVER,
Magistrate Court Clerk, SYLVIA MIRABAL,
Chief Magistrate Court Clerk, and JANE DOE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 12, 2001 Defendant Valerio filed a pleading entitled "Motion for Partial Summary Judgment No. I" (Doc No. 37), asking that summary judgment be entered in his favor as to all claims against him on the ground that he is entitled to absolute, quasi-judicial immunity. Defendant Valerio's motion for summary judgment will be granted.

**I.**     **Preliminary matters**

Defendant Valerio supports his motion for summary judgment with a statement of facts, in accordance with District of New Mexico Local Rule 56.1(b). Plaintiff responds in two ways. First, Plaintiff invokes Federal Rule of Civil Procedure 56(f) to request that I refuse Defendant Valerio's motion at least until she conducts discovery. Plaintiff argues in the alternative that Defendant Valerio's motion should be denied on the ground that Defendant Valerio has failed to meet his Rule 56 burden. Unfortunately, Plaintiff's response does not contain a concise, numbered statement of material facts as to which she contends there is a genuine issue of

material fact, in violation of Local Rule 56.1(b). Indeed, Plaintiff makes virtually no reference to Defendant Valerio's list of allegedly undisputed material facts and never identifies any of Defendant Valerio's facts by number. It is therefore very difficult to determine in just what ways Plaintiff believes Defendant Valerio has failed to meet his burden. Under such circumstances, I could, and perhaps should, deem Defendant Valerio's facts uncontroverted and simply consider whether Defendant Valerio is entitled to absolute immunity under these facts. D.N.M. LR-Civ. 56.1(b). I decline to do so in this instance, primarily because Defendant Valerio has not asked me to and because I prefer to examine motions on their merits.[1]

What follows then are the factual allegations concerning Defendant Valerio's claim to absolute immunity, drawn from Defendant Valerio's statement of facts. Where I have been able to discern a dispute, as to facts or supporting evidence, it is noted. Otherwise, these are now the undisputed facts with respect to Defendant Valerio's claim of absolute immunity.[2]

---

[1] Perhaps Plaintiff's counsel is unfamiliar with the Local Rules because he is unfamiliar with practice in federal court. Mr. Herrera is not yet a member of the bar of this federal court. If Mr. Herrera intends to continue to represent Plaintiff or any other party in litigation in the federal District of New Mexico, he should familiarize himself with all of the District of New Mexico's Local Rules, including D.N.M. LR-Civ. 56 and 83.2, and apply for federal bar membership immediately. By an Order to Show Cause filed on August 21, 2001, Mr. Herrera must show good cause why he should not be disqualified as Plaintiff's counsel. I also observe that even if Mr. Herrera practices primarily in New Mexico state court, he should at least have a suspicion as to how to respond properly to a motion for summary judgment. NMRA 1-056(D) does not differ materially from Local Rule 56.1(b).

[2] I will reserve until later in this Memorandum Opinion and Order discussion of facts that Plaintiff claims she will be able to dispute only following discovery. Suffice it for now to say that Plaintiff has not met her burden under Rule 56(f).

**II.     Facts**

On June 25, 1997, Taos County Deputy Sheriff Ken Adair ("Deputy Adair") stopped a woman. Deputy Adair identifies this woman--who is not Plaintiff--as Ivonne Vega. Deputy Adair issued three citations to Ivonne Vega: one for failing to produce proof of insurance, a second for failing to possess a driver's license, and a third for displaying an expired and fictitious temporary dealer permit (collectively, "June 25, 1997 tickets"). The June 25, 1997 tickets indicate that the woman who Deputy Adair stopped was born on February 10, 1972 and had a post office box in Taos. Her social security number is described as unknown. The June 25, 1997 tickets also indicate that the recipient was to appear in court on July 10, 1997. No one appeared on that day.

On October 12, 1997 Taos County Deputy Sheriff Eugene Holgate ("Deputy Holgate") stopped the same woman who Deputy Adair stopped on June 25, 1997. Deputy Holgate identifies this woman as Ivonne Aragon-Vega (hereinafter "Aragon-Vega"). Deputy Holgate issued two citations to Aragon-Vega: one for not having a driver's license and one for not having insurance (collectively, "October 12, 1997 tickets"). The October 12, 1997 tickets indicate that Aragon-Vega was born on August 15, 1978, that her social security number is unknown, and that she had a post office box in Taos. The Taos post office box number on the October 12, 1997 tickets is the same as that indicated on the June 25, 1997 tickets. The October 12, 1997 tickets also indicate that Aragon-Vega was to appear in court on October 24, 1997. Aragon-Vega did not appear.

On February 19, 1998, a Taos County Magistrate Court Clerk filed stamped a bench warrant issued as a result of Aragon-Vega's failure to appear to contest the October 12, 1997

tickets. The February 23, 1998 bench warrant contains the same personal identifiers as the October 12, 1997 tickets on which it was based.

On March 5, 1998, a Taos County Magistrate Court Clerk filed stamped a bench warrant issued as a result of Aragon-Vega's failure to appear to contest the June 25, 1997 tickets. The March 5, 1998 bench warrant contains the same personal identifiers as the June 25, 1997 tickets on which it was based.

On June 3, 1999, John Conway, the CEO of a nursing home where Plaintiff worked in Taos, contacted Defendant Curran.[3] Mr. Conway informed Defendant Curran that he and others at the nursing home suspected Plaintiff of dealing drugs to her co-workers. Defendant Curran then conducted a review of the Taos Police Department's warrant log and discovered the March 5, 1998 bench warrant, issued in the name "Ivonne Vega."

On June 4, 1999 Defendant Curran assigned Defendant Valerio to determine whether the target of the March 5, 1998 bench warrant was the same woman who Mr. Conway suspected of dealing drugs at the Taos nursing home. Defendant Valerio reviewed the March 5, 1998 bench warrant, and later in the day on June 4, 1999 went to the nursing home where Plaintiff worked. In the presence of Mr. Conway, Defendant Valerio asked Plaintiff if she was the woman wanted in the March 5, 1998 bench warrant. Plaintiff said no and told Defendant Valerio that she was

---

[3] Many of the facts in this paragraph and the next few are based on an affidavit from Defendant Curran. Plaintiff challenges Defendant Curran's affidavit with an Amended Decision from a case to which Defendant Curran was a party in the New Mexico First Judicial District Court. Plaintiff claims the issues discussed in the state court decision give reason to doubt Defendant Curran's credibility. "It is axiomatic that a judge may not evaluate the credibility of a witness in deciding a motion for summary judgment." Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000) (citation omitted). Other of the facts in this paragraph and the next few are based on an affidavit from Defendant Valerio. Plaintiff challenges this affidavit too, but again she does so without success because her challenge is to Defendant Valerio's credibility.

4

born on February 10, 1971. Observing that the birth date Plaintiff gave was off by exactly one year from that in the March 5, 1998 bench warrant, Defendant Valerio called police dispatch to verify the information in the warrant. Defendant Valerio also asked the dispatcher to call the Taos County Magistrate Court to ask if a judge was available to determine whether Plaintiff was the woman wanted in the March 5, 1998 bench warrant. The dispatcher told Defendant Valerio that she was unable to get through to the Magistrate Court.

Defendant Valerio then called the Magistrate Court himself. He reached a court clerk and explained the situation. The court clerk put him on hold. When the court clerk returned to the phone, she told Defendant Valerio that she had advised Magistrate Judge Erminio Martinez of the situation. The court clerk reported to Defendant Valerio that Judge Martinez had directed Defendant Valerio to bring Plaintiff to the courthouse.[4]

Defendant Valerio placed Plaintiff in his police vehicle and drove to Taos County

---

[4] Plaintiff seems to contest Defendant Valerio's assertion that Judge Martinez, through a court clerk, directed Defendant Valerio to bring Plaintiff to the courthouse. Specifically, Plaintiff argues that a material factual dispute exists here because Judge Martinez in his own affidavit failed to affirm Defendant Valerio's characterization of Defendant Valerio's phone call to the court clerk. What Judge Martinez actually says is that he has no "independent recollection" of having instructed a court clerk to direct Defendant Valerio to bring Plaintiff to the courthouse but that his practice is to order officers to do just what Defendant Valerio describes. Most importantly, the burden is on Plaintiff to produce evidence contrary to the proposed fact. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Simply asserting that a second witness did not affirm the first, even if true, does not meet this burden.

Magistrate Court. Officer Valerio did not handcuff Plaintiff.[5]

Upon arriving at the courthouse, Defendant Valerio and Plaintiff appeared before Judge Martinez. Defendant Valerio explained to Judge Martinez that Plaintiff insisted she was not the woman wanted in the March 5, 1998 bench warrant and that Plaintiff had provided Defendant Valerio with an address and date of birth different than those on the March 5, 1998 bench warrant. Plaintiff then apparently told Judge Martinez the same thing. As these dialogues unfolded, court clerk Lisa Jeantette located the February 23, 1998 bench warrant. After considering two bench warrants and Plaintiff's and Defendant Valerio's explanation, Judge Martinez ordered Defendant Valerio to arrest Plaintiff. Defendant Valerio complied.[6]

## III. Discussion

Plaintiff alleges in her complaint that Defendant Valerio violated the Fourth and Fourteenth Amendments to the United States Constitution in various ways. Plaintiff seeks damages and injunctive relief. I previously dismissed, by stipulation, Plaintiff's demand for an

---

[5] Defendant Valerio does not describe his encounter with Plaintiff at the nursing home and their subsequent trip to the Taos County Magistrate Court as an arrest. Plaintiff never seems to dispute this characterization. In fact, Plaintiff brings materials to the Court's attention that are consistent with Defendant Valerio's indication that she was arrested at the Taos County Magistrate Court and not elsewhere, Pl's Resp. Ex. 1, and that she voluntarily accompanied Defendant Valerio to the Taos County Magistrate Court, id. Ex. 2. While Plaintiff may be contending that she can dispute this fact after discovery, for reasons explained infra, that discovery will not be permitted simply so she can attempt to show that she was first arrested at the nursing home.

[6] Defendant Valerio claims in his affidavit that Judge Martinez' arrest instruction came at 4:50 p.m. Plaintiff points to Defendant Valerio's "Arrest/Booking Report" which indicates that Plaintiff was arrested at "1536" on June 4, 1999. Plaintiff claims that this discrepancy in time contradicts Defendant Valerio's statement that Judge Martinez instructed him to arrest Plaintiff. But the difference only raises an issue as to the time at which Defendant Valerio arrested Plaintiff, not whether Judge Martinez ordered the arrest.

injunction against Defendant Valerio.

One of the bases for Plaintiff's damages claim against Defendant Valerio is that he allegedly arrested Plaintiff on a warrant that had been canceled. The undisputed facts--and even the chronology in Plaintiff's complaint--do not bear out her allegation that any warrant had been canceled until after Plaintiff was arrested. The other bases for the allegations against Defendant Valerio relate to his alleged failure to determine that Plaintiff was not the target of the February 23, 1998 or March 5, 1998 bench warrants and an alleged lack of probable cause to arrest Plaintiff.

Defendant Valerio argues that he is entitled to absolute, quasi-judicial immunity for any claims stemming from Plaintiff's arrest because he was simply following the order of Magistrate Judge Martinez.

### A.     Rule 56(f)

Federal Rule of Civil Procedure 56(f) provides that if a party opposing a motion for summary judgment cannot present by affidavit facts essential to justify opposition, then the court has several options. It may refuse the motion for summary judgment, or order a continuance so that the party opposing the motion can obtain affidavits or take depositions or engage in other appropriate discovery, or the Court may "make such other order as is just." Plaintiff invokes Rule 56(f) to seek discovery. Plaintiff contends in her brief that she cannot respond to Defendant Valerio's motion for partial summary judgment until after taking the depositions of Judge Erminio Martinez and Defendants Valerio and Curran. Plaintiff's counsel, Mr. Herrera, maintains in an affidavit submitted under Rule 56(f) that he also "need[s] to talk to" the police dispatcher and court clerk with whom Defendant Valerio spoke, Doc. No. 40 at ¶5A, and that he

7

needs "to find out Conway's side of the story," id. ¶7.  As Plaintiff points out, no party has yet undertaken discovery in this case and discovery is now stayed.

A Rule 56(f) request "should be treated liberally unless lacking in merit." Lewis v. City of Ft. Collins, 903 F2d. 752, 758 (10th Cir. 1990).  There are limits though.  A party seeking relief under Rule 56(f) must identify the facts she believes would be discovered upon the taking of the requested deposition.  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554-55 (10th Cir. 1993).  That party must also indicate what steps have been taken to obtain these facts by other means.  Price v. Western Resources, 232 F.3d 779, 784 (10th Cir. 2000). The party must then "demonstrate precisely how additional discovery will lead to a genuine issue of material fact."  Ben Ezra, Weinstein, and Co., Inc. v. America Online, Inc., 206 F.3d 980, 987 (10th Cir. 2000).  The party invoking Rule 56(f) does not meet her burden merely by asserting that the evidence supporting opposition to the motion for summary judgment is in another party's hands.  Jones v. City and County of Denver, 854 F.2d 1206, 1211 (10th Cir. 1988).

The limits on a party seeking Rule 56(f) relief, and a district court's discretion to grant Rule 56(f) relief, are "further restricted" where the summary judgment motion is based on immunity from suit.  Id.; see also Lewis, 903 F.2d at 758.  Immunity issues should be resolved on summary judgment and prior to discovery, if possible, since discovery is one of the burdens from which immunity provides shelter.  Jones, 854 F2d at 1211.  Accordingly, Rule 56(f) should not be used as a vehicle for undermining immunity principles.  Id.  Stated another way, when summary judgment is sought on the ground of immunity, Rule 56(f) does not become a "license" to engage in "a fishing expedition" which would otherwise not be permitted.  Lewis, 903 F.2d at 759. At the very least, a plaintiff requesting relief under Rule 56(f) following a defendant's

8

immunity claim must demonstrate a connection between the information sought and the immunity claim, id., or that the information sought is relevant to the pending motion, Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1265 (10th Cir. 1984).[7]

Defendant Valerio claims absolute immunity on the ground that he arrested Plaintiff only upon Judge Martinez' order to do so. The Tenth Circuit has held more than once and in quite certain terms that an official who executes the order of a judge is entitled to the same absolute immunity of the judge who gives the order. Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990); Valdez v. City and County of Denver, 878 F.2d 1285, 1287-89 (10th Cir. 1989). Thus, the initial fact material to Defendant Valerio's claim to absolute immunity is whether Judge Martinez ordered Defendant Valerio to arrest Plaintiff. Then, with respect to Rule 56(f), the question is whether Plaintiff has demonstrated that she will or might discover facts to controvert the claim that Judge Martinez ordered Defendant Valerio to arrest Plaintiff. Plaintiff or her attorney Mr. Herrera must also explain what steps they have taken to obtain such information by other means.

Plaintiff through Mr. Herrera expresses a desire to talk to various people on assorted issues. None of these relates directly to whether Judge Martinez ordered Defendant Valerio to arrest Plaintiff. The closest Mr. Herrera comes to meeting his Rule 56(f) burden with respect to whether Judge Martinez gave an arrest order is when Mr. Herrera contends that he needs to depose Defendant Valerio about "the things Valerio claims Martinez said." (Doc. No. at ¶5B.)

---

[7] The cases cited which discuss the relationship between Rule 56(f) and the immunity doctrine all involve instances in which defendants have claimed qualified, rather than absolute, immunity. Nevertheless, the purposes of the twin principles are similar. Therefore, the reasons why Rule 56(f) relief should be restricted where a defendant has claimed immunity is as applicable (if not more so) when absolute, rather than qualified, immunity is at issue.

9

This imprecise request does not explain why a deposition is necessary to create an issue of material fact. Plaintiff seems to ask for nothing more than permission to fish. The same is true of Mr. Herrera's asserted need to depose Judge Martinez (who is not a party and could thus have been approached by Plaintiff even during the discovery stay). Most important though, if Plaintiff believed she could controvert Judge Martinez' and Defendant Valerio's statements under oath that Judge Martinez ordered Defendant Valerio to arrest her at the Taos County Courthouse, she could have submitted her own affidavit to that effect. If Judge Martinez did not in fact order Defendant Valerio to arrest her, she could go far in avoiding summary judgment by swearing as much, without the need for any discovery. Her silence here speaks volumes.

Mr. Herrera also observes that Defendant Valerio contends that he did not arrest Plaintiff at the nursing home and that Mr. Conway would testify in support of that conclusion. Mr. Herrera then states that he "need[s] to depose Valerio on these issues as well as John Conway." (Id. at ¶5E.) Construing Mr. Herrera's affidavit quite liberally, I believe that Plaintiff's position may also be that she could argue--after discovery--that she was first arrested at the nursing home, not later at the courthouse. Mr. Conway is not a party and Plaintiff could thus at least take steps to get Mr. Conway's statement without discovery. Yet there is no indication that she did so. But most important, again, is Plaintiff's silence. Plaintiff does not need anyone else's statement to create an issue of material fact as to whether she was first arrested at the nursing home. She could easily have provided her own affidavit to support her implied position.

Still further, even if Defendant Valerio arrested Plaintiff at the nursing home, to defeat the claim of immunity Plaintiff would need to demonstrate that Defendant Valerio was not just fulfilling Judge Martinez' directive. The closest Plaintiff comes is when Mr. Herrera expresses a

necessity to "talk to" the "dispatcher and clerk" with whom Defendant Valerio spoke, apparently while at the nursing home. (Doc. No. at ¶5A.) Again, Plaintiff gives the Court no reason to think that the police dispatcher and court clerk would create an issue of material fact by controverting Defendant Valerio's and Judge Martinez' accounts of what happened. Mr. Herrera just asserts that he "need[s] to talk" with them. Mr. Herrera also contends that he must depose Defendant Valerio first to find out precisely who he needs to talk to. In fact he does not. Without discovery, Mr. Herrera might have to work a bit harder to determine just which police dispatcher and court clerk spoke to Defendant Valerio.[8] But these are insufficient grounds for ignoring the claim of immunity and throwing the case open to discovery. There is no indication that Plaintiff tried "to talk" to any dispatcher or clerk.[9] Once again, it appears Plaintiff just wants to fish.

    Mr. Herrera's other assertions are of even less aid to Plaintiff's Rule 56(f) argument. His request to investigate the "anomaly" of Defendant Valerio arresting Plaintiff under two bench warrants with personal data different yet sometimes similar to Plaintiff's is irrelevant to the issue as to whether Defendant Valerio acted at the direction of Judge Martinez. A probable cause inquiry could possibly be appropriate if Defendant Valerio acted without instruction from a

---

[8] Judge Martinez identified the clerk with whom Defendant Valerio spoke by phone as Ms. Jeantette.

[9] The court clerk who failed to recall the bench warrants was until quite recently a Jane Doe Defendant. (See Doc. No. 44) (dismissing claims based on failure to recall bench warrant, in effect dismissing Jane Doe) If that Jane Doe is also the court clerk who relayed instructions over the phone from Judge Martinez at the courthouse to Defendant Valerio at the nursing home, then I recognize that Mr. Herrera could not have taken her statement before responding to Defendant Valerio's motion. Nonetheless, Mr. Herrera could at least have attempted to inquire as to which court clerk did what, and there is no indication he did so.

11

judge in arresting Plaintiff, but those are not the facts. The other "anomaly" of a supplemental police report that was filed only after delivery of a tort claim notice also does not bear on the immunity issue. The truth of matters Mr. Conway discussed with Defendant Curran is irrelevant too, but if Plaintiff insisted upon disputing them she could perhaps raise a hearsay objection or, again, provide her own affidavit. In sum, Plaintiff has not met her burden under Rule 56(f) and the Court will therefore proceed to rule on the motion for summary judgment.

### B.      Absolute immunity

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the factual record and reasonable inferences therefrom are examined in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U. S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the pleadings. Id. I have already applied this standard and found that Defendant Valerio arrested Plaintiff at the order of Judge Martinez.

As previously observed, the law is on Defendant Valerio's side too: an officer who acts on the order of a judge is absolutely immune from a suit for damages, as the judge would be.

Turney, 898 F.2d at 1472; Valdez, 878 F.2d at 1287-89.  But there are exceptions, one of which Plaintiff raises.  Quasi-judicial immunity derives from the judge on whose behalf the official acts.  Turney, 898 F.2d at 1474.  Thus, just as judges do not enjoy immunity from suit for actions taken "in the clear absence of all jurisdiction" quasi-judicial officials lose immunity in such instances too.  Id. (quotation omitted).

Plaintiff claims that Taos County Magistrate Judge Martinez acted outside of his jurisdiction when he ordered Defendant Valerio to arrest Plaintiff because in doing so he made a ruling in Taos County Magistrate Judge Betty Gonzales' case.[10]  However, jurisdiction is not a concept that is particular to an individual judge within a given court.  The proper inquiry into whether a judge acts in the clear absence of all jurisdiction is to inquire whether a court, as a collective of individual judges, has authority or power to take a particular action.  For example, a probate judge who tries a criminal case acts in the clear absence of his jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 357 n. 7 (1978).  This same conclusion does not follow where a Magistrate Judge simply performs a task on behalf an absent colleague on the same Magistrate Court.

## IV.     Conclusion

To deny or refuse temporarily Defendant Valerio's motion would essentially eliminate the immunity granted in Valdez and Turney.  Adopting Plaintiff's position would require law enforcement officers, upon receipt of a verbal arrest order from a judge, to perform a number of acts which would inhibit "fearless and unhesitating execution of court orders."  Valdez, 878 F.2d

---

[10] Magistrate Judge Gonzales signed the February 23, 1998 bench warrant.  The signature on the March 5, 1989 bench warrant is illegible.

at 1288. Plaintiff would have officers first conduct an independent probable cause determination and investigate whether the judge issuing the order had actually been assigned the particular case. Then, if the officer disagreed with the judge's determination as to the grounds for arrest, the officer would be forced to choose between discharge, contempt, or suit. The officer would face the same difficult choice if his impromptu investigation revealed that the judge giving the order was simply filling in for an unavailable associate. These rather absurd scenarios are exactly what the quasi-judicial immunity doctrine is designed to prevent.

    IT IS THEREFORE ORDERED THAT Defendant Valerio's motion for summary judgment on the ground of absolute quasi-judicial immunity (Doc. No. 37) is granted.

_____
CHIEF UNITED STATES DISTRICT JUDGE